IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



DEPUY SYNTHES SALES, INC.,

Plaintiff,

vs.

MICHAEL JONES, JACOB SCHOOLS and SKY SURGICAL, INC.,

Defendants.

Civil Action No.: 2:13cv392

## COMPLAINT

Plaintiff DePuy Synthes Sales, Inc., successor in interest to DePuy Spine Sales Limited Partnership ("DePuy Synthes"), by counsel, seeks injunctive relief and damages against defendants Michael Jones ("Jones"), Jacob Schools ("Schools"), and Sky Surgical, Inc. ("Sky Surgical") relating to Sky Surgical's employment of Jones and Schools in breach of their Employee Secrecy, Intellectual Property, Non-Competition and Non-Solicitation Agreements (the "Employee Secrecy Agreement") with DePuy Synthes and other wrongful acts.

## PARTIES, JURISDICTION AND VENUE

1. DePuy Synthes is a Massachusetts Corporation with a principal place of business in Raynham, Massachusetts. DePuy Synthes succeeded to all rights and obligations of DePuy Spine Sales Limited Partnership ("DePuy Spine") by operation of law on December 18, 2012, when DePuy Spine converted from a limited partnership to a stock corporation and changed its name to DePuy Synthes, Inc. DePuy Synthes is a subsidiary of and controlled by Johnson & Johnson ("J&J"), which is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.

2. Jones is an individual who resides in Virginia Beach, Virginia. Jones was formerly employed by DePuy Synthes as a Senior Sales Representative. On November 10, 2012, Jones resigned his employment with DePuy Synthes.

3. Schools is an individual who resides in Virginia Beach, Virginia. Schools was formerly employed by DePuy Synthes as a Sales Representative. On December 20, 2012, Schools resigned his employment with DePuy Synthes.

4. Sky Surgical is a Virginia corporation with a principal place of business in the City of Chesapeake, Virginia. Sky Surgical currently employs Jones and Schools.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.00.

6. Venue is proper in this Court, as Sky Surgical has its principal place of business in the City of Chesapeake, and all Defendants regularly conduct substantial business activities within the area encompassed by the Norfolk Division.

## FACTS COMMON TO ALL COUNTS

*Business and Structure of DePuy Synthes*

7. DePuy Synthes develops, markets, and sells products for the treatment of spinal disease, disorders and injuries, including spinal implants, external fixation devices, related surgical instrumentation and orthobiologic products. Spinal implants are used in spinal surgeries to stabilize and fuse segments of the spine and include, *inter alia*, interbody cages, rods, plates, other devices, and the highly specialized screws used to affix these items to human bone. DePuy Synthes' orthobiologic products are made of synthetic and human generated materials used to reinforce bone and facilitate bone regeneration, including bone graft and bone growth products.

8. The market for spinal implant and related products is highly competitive. To

succeed in the spinal device industry, DePuy Synthes makes substantial investments in the education, training and development of its sales representatives, some of whom are DePuy Synthes employees and some of whom are employees of independent sales organizations that act as sales representatives for DePuy Synthes.

9. DePuy Synthes also makes substantial investments in the training and education of surgeon customers on DePuy Synthes products, and in the development of its goodwill among its surgeon and hospital customers and accounts.

10. Throughout the sales process, sales representatives are the chief point of contact with the hospital purchasing staff and surgeon customers, and they embody the goodwill that DePuy Synthes has invested in over the years. Sales representatives selling DePuy Synthes' products spend hours in surgeries with surgeon customers, work closely with hospital staff, and develop close, often personal relationships with these customers and accounts.

11. In the course of representing DePuy Synthes products, sales representatives acquire and are entrusted with extensive confidential information, including information about product pricing; sales strategies; individual surgeons' purchasing volumes and patterns; individual surgeons' product design preferences; and the performance, strengths and weaknesses of DePuy Synthes products in particular surgeries or with particular surgical techniques.

*Jones's and Schools' Employment With DePuy Synthes*

12. Jones and Schools served as DePuy Synthes sales representatives selling DePuy Synthes products to hospitals and surgeons in Eastern Virginia for several years, first as sales representatives working for Quizmo, Inc. ("Quizmo"), a DePuy Synthes sales organization, and then as sales representatives employed directly by DePuy Synthes.

13. At all times that Jones and Schools represented DePuy Synthes products, they were subject to non-disclosure and non-competition agreements. As sales representatives with Quizmo, Jones and Schools were prohibited from representing any product line competitive with DePuy Synthes and from disclosing or using DePuy Synthes confidential information. Jones and Schools also were subject to certain non-competition obligations prohibiting their competitive activities for one year following the end of their engagement with Quizmo in the cities in which each represented DePuy Synthes products. In order to represent DePuy Synthes products, Quizmo was required to maintain such non-competition and non-disclosure agreements with its sales representatives.

14. On February 27, 2012, Jones signed a written employment offer from DePuy Synthes for the position of Senior Sales Representative. The compensation package offered by DePuy Synthes included a base salary, additional commissions on his sales in his territory, a monthly car allowance, and a sign-on bonus. The February 2012 offer was contingent upon Jones signing a non-competition and non-disclosure agreement with DePuy Synthes.

15. In connection with accepting his offer, and as an express condition of his employment, Jones signed the Employee Secrecy Agreement on the same day that he signed his employment offer. A true and accurate copy of the Employee Secrecy Agreement signed by Jones is attached to this Complaint as Exhibit A.

16. On February 14, 2012, Schools signed a written employment offer from DePuy Synthes for the position of Sales Representative. The compensation package offered by DePuy Synthes included a base salary, additional commissions on his sales in his territory, a monthly car allowance, and a sign-on bonus. The February 2012 offer was contingent upon Schools signing a non-competition and non-disclosure agreement with DePuy Synthes.

17. In connection with accepting his offer, and as an express condition of his employment, Schools signed the Employee Secrecy Agreement on the same day that he signed his employment offer. A true and accurate copy of the Employee Secrecy Agreement signed by Schools is attached to this Complaint as Exhibit B.

18. In the Employee Secrecy Agreement, Jones and Schools each agreed that, during his employment and for a period of eighteen months following the end of his employment, he would not perform work for a competitor in a position in which he could disadvantage DePuy Synthes or advantage a competitor of DePuy Synthes by the disclosure or use of DePuy Synthes' confidential information to which he had access.

19. Specifically, Jones and Schools agreed to the following in paragraph 6 of the Employee Secrecy Agreement:

> Except as provided in the next sentence or to any extent prohibited by applicable law, during your employment with any COMPANY [defined as DePuy Synthes and other Johnson & Johnson entities] and for a period of eighteen (18) months after your last date of employment within the COMPANIES, you will not, directly or indirectly, perform work for any COMPETITOR in any position and in any location in which you could disadvantage any COMPANY or advantage the COMPETITOR by your disclosure or use of CONFIDENTIAL INFORMATION to which you had access.

20. In the Employee Secrecy Agreement, Jones and Schools also each agreed that, during his employment and for a period of eighteen months following the end of his employment, he would not directly or indirectly solicit, service, or sell competitive products to any of the DePuy Synthes accounts, customers or clients with whom he had contact in the past twelve months.

21. Specifically, Jones and Schools agreed to the following in paragraph 7 of the Employee Secrecy Agreement:

> To avoid disadvantaging your EMPLOYER or any other COMPANY through your use of relationships you gained, maintained, or enhanced through your

employment with any COMPANY, you will not, during your employment with any COMPANY or for eighteen (18) months after your last date of employment within the COMPANIES, directly or indirectly, solicit any business from, sell to, or render any service to any accounts, customers or clients with which you have had contact during the last twelve (12) months of your employment within the COMPANIES in connection with the sale of any product or service that resembles or competes with one that is being (or is being prepared to be) sold, developed or acquired by any COMPANY for which you worked during the last twelve (12) months of your employment.

22. In the Employee Secrecy Agreement, Jones and Schools also each agreed that, for a period of twelve months following the end of his employment, he would not solicit certain DePuy Synthes employees. Specifically, Jones and Schools each agreed in Paragraph 8 of the Employee Secrecy Agreement that, "for a period of twelve (12) months after [his] last date of employment within the COMPANIES, [he] will not, directly or indirectly, solicit or hire on [his] own behalf, or on behalf of others, any individual employed by any COMPANY with whom [he had] worked or who became known to [him] as a result of [his] employment within the COMPANIES."

23. Pursuant to paragraph 17 of the Employee Secrecy Agreement, the obligations of Jones and Schools thereunder are governed by New Jersey law without regard to its conflict of law rules. Accordingly, the obligations of Jones and Schools under paragraphs 6, 7 and 8 of the Employee Secrecy Agreement, as well as the remainder of the Agreement, are to be governed, interpreted and enforced in accordance with the law of New Jersey.

24. As a Senior Sales Representative for DePuy Synthes, Jones sold DePuy Synthes products to accounts in the Eastern Virginia area. Jones solicited sales from and provided services to hospital accounts that included, without limitation: Chesapeake General, Children's Hospital in Norfolk, Mary Immaculate Hospital in Newport News, Naval Medical Center in Portsmouth, Riverside Regional in Newport News, Sentara CarePlex in Hampton, Sentara Norfolk, Sentara Virginia Beach, and Sentara Williamsburg Regional.

25.     As a Sales Representative for DePuy Synthes, Schools sold DePuy Synthes products to accounts in the Eastern Virginia area. Schools solicited sales from and provided services to hospital accounts that included, without limitation: Chesapeake General, Children's Hospital in Norfolk, DePaul Medical Center in Norfolk, Harbour View Health Center in Norfolk, Mary Immaculate Hospital in Newport News, Maryview Medical Center in Portsmouth, Naval Medical Center in Portsmouth, Riverside Regional in Newport News, Sentara CarePlex in Hampton, Sentara Leigh Hospital in Norfolk, Sentara Norfolk, Sentara Obici in Suffolk, Sentara Princess Anne Hospital in Virginia Beach, Sentara Virginia Beach, and Sentara Williamsburg Regional.

26.     As sales representatives, Jones and Schools called upon specific surgeons in the accounts and were present for their surgeries. Jones and Schools thus have relationships with DePuy Synthes' surgeon customers in their territories, and know their product preferences, purchasing histories, and concerns relating to DePuy Synthes products. Jones and Schools regularly made sales calls to surgeon customers in order to discuss DePuy Synthes' products in relation to individual surgeons' needs, expectations, and concerns. Jones and Schools were responsible for ensuring that the surgeons had access to products as needed, and they attended surgeries on a daily basis so they could provide products or information about products at a moment's notice.

27.     Jones and Schools also developed relationships with hospital administrators and purchasing staff in their territories. Jones and Schools regularly made sales calls to hospital staff in order to discuss DePuy Synthes' products and pricing, as well as the hospital account's purchasing needs and expectations.

28. The surgeons and staff in the hospital accounts in which Jones and Schools worked have come to associate them with DePuy Synthes' products such that Jones and Schools can do considerable damage to DePuy Synthes by undertaking representation of competitive spinal products.

29. During their employment and throughout the years in which they served as sales representatives selling DePuy Synthes products, Jones and Schools were entrusted with and obtained confidential information about DePuy Synthes' business, including without limitation product pricing; sales strategies; individual surgeons' purchasing volumes and patterns; individual surgeons' product design preferences; and the performance, strengths and weaknesses of DePuy Synthes products in particular surgeries or with particular surgical techniques. Product pricing is negotiated directly with each hospital, hospital system or medical facility and on terms that are confidential to DePuy Synthes.

30. During the period in which they served as sales representatives selling DePuy Synthes products, Jones and Schools also received technical, clinical, and product training at DePuy Synthes' expense.

***Jones's and Schools' Resignations from DePuy Synthes***

31. On November 10, 2012, Jones resigned from DePuy Synthes. When DePuy Synthes inquired as to Jones's employment plans, Jones disclosed that he had received an offer from a distributor of Globus Medical, Inc. ("Globus"), a direct competitor of DePuy Synthes' in the spinal implant business. Jones further stated that he planned to abide by the terms of the Employee Secrecy Agreement.

32. Following his resignation, Jones ignored further inquiries from DePuy Synthes concerning whether he actually had accepted a position with a Globus distributor, the identity of

the Globus distributor, and the details of the job he would be performing.

33. Jones's refusal to provide any of this information was in direct violation of his obligations under the Employee Secrecy Agreement. Specifically, paragraph 9 of the Employee Secrecy Agreement requires that Jones disclose to DePuy Synthes, both at the time he resigned his employment and during the eighteen (18) month period following the termination of his employment, "the identity of each entity or person for which [he] will be working, [his] new title, and the responsibilities of the position" and "any additional information requested by [DePuy Synthes] that is reasonably related" to a determination of whether the prospective position is consistent with his non-competition and non-solicitation obligations under the Employee Secrecy Agreement.

34. On December 20, 2012, Schools resigned from DePuy Synthes. When DePuy Synthes inquired as to Schools' employment plans, Schools disclosed that he planned to leave the spinal implant business. DePuy Synthes further understood from Schools that he planned on entering the software development business.

35. At no time did Schools disclose to DePuy Synthes that he was contemplating or had accepted employment with Sky Surgical. This failure constitutes a violation of Schools' obligations under paragraph 9 of the Employee Secrecy Agreement.

### Jones's and Schools' Employment by Sky Surgical

36. Jones and Schools have accepted employment with Sky Surgical representing Globus spinal implant products. On information and belief, Jones and Schools have been servicing the same accounts, either directly or indirectly through others, in which they had been representing DePuy Synthes products.

37. Sky Surgical is a distributor selling Globus products in Virginia. Globus manufactures, markets, and sells products that directly compete with DePuy Synthes products. Among the products Globus manufactures are spinal implant devices, cervical plating systems, interbody spinal fusion devices and pedicle screw systems.

38. Sky Surgical's sales representatives compete directly with DePuy Synthes' sales representatives for the same business from the same customers.

39. Shortly following the resignation of Jones and then Schools, certain key surgeons in their DePuy Synthes accounts who previously used DePuy Synthes products have switched to competitive products from Globus. For example, the Sentara Norfolk and Sentara Virginia Beach accounts had predominantly utilized DePuy Synthes products and had been satisfied with those products. Upon the resignations of Jones and Schools, those accounts began to purchase Globus products for use in spinal surgeries for which they previously purchased DePuy Synthes products. Both hospitals were significant DePuy Synthes accounts that had been serviced by Jones and Schools, and Jones and Schools had close relationships with influential surgeons working in those accounts. On information and belief, Jones and Schools caused the referenced surgeons and accounts to switch from DePuy Synthes to Globus products by directly or indirectly soliciting or assisting with the solicitation of sales of Globus products to these surgeons and accounts on behalf of Sky Surgical.

40. On January 31, 2013, Jones was witnessed rendering services on behalf of Sky Surgical at Mary Immaculate Hospital, in connection with the present or past sale of Globus products. Mary Immaculate Hospital is one of the accounts to which Jones previously represented DePuy Synthes products.

41. On February 19, 2013, Schools was working on Sky Surgical's behalf at Sentara CarePlex in connection with the present or past sale of Globus products. Sentara CarePlex is one of the accounts to which Schools previously represented DePuy Synthes products.

42. On February 20, 2013, Schools covered a spinal surgery using Globus products at Mary Immaculate Hospital, one of the accounts to which Schools previously represented DePuy Synthes products.

43. On information and belief, Jones has solicited at least one DePuy Synthes employee to join him at Sky Surgical to sell Globus products.

44. Sky Surgical, Jones, and Schools have acted willfully, wantonly and in conscious disregard of DePuy Synthes' rights.

45. The actions of Sky Surgical, Jones, and Schools already have caused irreparable damage to DePuy Synthes' business.

46. Absent injunctive relief, DePuy Synthes will suffer further irreparable harm from the activities of Sky Surgical, Jones, and Schools.

### Count I
### Breach of Contract (against Jones)

47. The allegations contained in Paragraphs 1-46 above are incorporated by reference as if fully stated herein.

48. The Employee Secrecy Agreement is valid and enforceable in that it protects legitimate interests of DePuy Synthes, it poses no undue hardship on Jones, and it is not injurious to the public.

49. Jones's failure to disclose to DePuy Synthes information regarding his employment with Sky Surgical is in breach of the Employee Secrecy Agreement.

50. Jones's competitive activities as an employee of Sky Surgical constitute breaches

of the non-solicitation, non-competition and non-disclosure covenants contained in the Employee Secrecy Agreement.

51. Jones's solicitation of a DePuy Synthes employee is in breach of the Employee Secrecy Agreement.

52. Jones's breach of the Employee Secrecy Agreement presents an immediate threat of irreparable harm to DePuy Synthes and has caused and will cause DePuy Synthes to suffer substantial monetary damages in an amount to be determined at trial.

## Count II
## Breach of Contract (against Schools)

53. The allegations contained in Paragraphs 1-52 above are incorporated by reference as if fully stated herein.

54. The Employee Secrecy Agreement is valid and enforceable in that it protects legitimate interests of DePuy Synthes, it poses no undue hardship on Schools, and it is not injurious to the public.

55. Schools' failure to disclose to DePuy Synthes information regarding his employment with Sky Surgical is in breach of the Employee Secrecy Agreement.

56. Schools' competitive activities as an employee of Sky Surgical constitute breaches of the non-solicitation, non-competition and non-disclosure covenants contained in the Employee Secrecy Agreement.

57. Schools' breach of the Employee Secrecy Agreement presents an immediate threat of irreparable harm to DePuy Synthes and has caused and will cause DePuy Synthes to suffer substantial monetary damages in an amount to be determined at trial.

## Count III
## Tortious Interference with Contract

58. DePuy Synthes incorporates by reference its allegations in paragraphs 1-57 as if fully set forth herein.

59. Sky Surgical has been on notice of the existence of Jones's and Schools' non-competition, non-disclosure and non-solicitation obligations to DePuy Synthes under the Employee Secrecy Agreement.

60. Sky Surgical engaged and continues to engage Jones and Schools in violation of the Employee Secrecy Agreement despite its knowledge of Jones's and Schools' non-competition, non-disclosure, and non-solicitation obligations to DePuy Synthes under the Employee Secrecy Agreement.

61. Sky Surgical's engagement and continued engagement of Jones and Schools without proper restrictions is designed to induce Jones and Schools to breach their contractual obligations to DePuy Synthes.

62. Sky Surgical's engagement and continued engagement of Jones and Schools without proper restrictions is improper in motive or means as it is being done, *inter alia,* with the intention of unfairly competing by using confidential information protected under the Employee Secrecy Agreement and by unfairly capitalizing on the goodwill developed by DePuy Synthes.

63. Sky Surgical's unlawful interference presents an immediate threat of irreparable harm to DePuy Synthes and has caused and will cause DePuy Synthes to suffer monetary damages in an amount to be determined at trial.

## Count IV
## Statutory Conspiracy

64. DePuy Synthes incorporates by reference the allegations in paragraphs 1 through 63 as if fully set forth herein.

- 14 -

65. Sky Surgical, Jones, and Schools combined, associated, agreed, mutually undertook, concerted together and/or otherwise conspired with each other to knowingly, willfully and maliciously have Jones and Schools breach their fiduciary duties, use and misappropriate confidential information and otherwise violate their Employee Secrecy Agreement by, among other things, working for Sky Surgical in direct violation of paragraphs 6 and 7, soliciting, directly or indirectly, DePuy Synthes customers and selling them spinal products that directly compete with DePuy Synthes products, and, upon information and belief, misappropriating, using or disclosing confidential and proprietary information of DePuy Synthes.

66. The conduct of Sky Surgical, Jones and Schools violates §§ 18.2-499 and 500 of the Code of Virginia insofar as they have, without lawful justification, combined, agreed and/or otherwise unlawfully conspired to injure DePuy Synthes in its trade and business.

67. As a result of the unlawful conduct of Sky Surgical, Jones, and Schools, DePuy Synthes has suffered, and will continue to suffer, irreparable harm and damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff DePuy Synthes requests that the Court grant the following relief:

(1) Enter relief in the form of a preliminary injunction, ordering that:

    (a) Until May 10, 2014, or until further order of the Court, whichever is later, Defendant Michael Jones is enjoined from:

        (i) Directly or indirectly soliciting any competitive business from, selling any competitive products to, or rendering any service on behalf of a competitor to any accounts, customers or clients with which he had contact during the last twelve (12) months of his employment with DePuy Synthes in connection with the sale of any DePuy Synthes products or services; and

        (ii) Directly or indirectly working in any sales or management position and in any location in which he could disadvantage DePuy Synthes or advantage Defendant Sky Surgical or another DePuy Synthes competitor by his disclosure or use of DePuy Synthes' confidential information to which he had access.

    (b) Until June 20, 2014, or until further order of the Court, whichever is later, Defendant Jacob Schools is enjoined from:

        (i) Directly or indirectly soliciting any competitive business from, selling any competitive products to, or rendering any service on behalf of a competitor to any accounts, customers or clients with which he had contact during the last twelve (12) months of his employment with DePuy Synthes in connection with the sale of any DePuy Synthes products or services; and

        (ii) Directly or indirectly working in any sales or management position and in any location in which he could disadvantage DePuy Synthes or advantage Defendant Sky Surgical or another DePuy Synthes competitor by his disclosure or use of DePuy Synthes' confidential information to which he had access.

    (c) Until May 10, 2014, or until further order of the Court, whichever is later, Sky Surgical is enjoined from directly or indirectly employing or engaging Jones in any capacity identified in paragraph (1)(a) above.

    (d) Until June 20, 2014, or until further order of the Court, whichever is later, Sky Surgical is enjoined from directly or indirectly employing or engaging Schools in any capacity identified in paragraph (1)(b) above.

    (e) That until further order of the Court, Jones and Schools are enjoined from using or disclosing the confidential information of DePuy Synthes and Sky Surgical is enjoined from soliciting from Jones or Schools or using the confidential information of DePuy Synthes.

    (f)    Jones and Schools shall immediately return to DePuy Synthes all confidential information concerning DePuy Synthes in their possession, custody or control.

    (g)    Until November 10, 2013, Jones shall not directly or indirectly solicit any DePuy Synthes employee whom he worked with or knew while employed by DePuy Synthes to join Sky Surgical or any other DePuy Synthes competitor.

    (h)    Until December 20, 2013, Schools shall not directly or indirectly solicit any DePuy Synthes employee whom he worked with or knew while employed by DePuy Synthes to join Sky Surgical or any other DePuy Synthes competitor.

(2)    After trial on the merits,

    (a)    Enter judgment in favor of DePuy Synthes on Counts I through IV;

    (b)    Award compensatory damages against Jones in an amount to be determined at trial, but no less than One Million Dollars ($1,000,000.00);

    (c)    Award compensatory damages against Schools in an amount to be determined at trial, but no less than One Million Dollars ($1,000,000.00);

    (d)    Award compensatory damages against Sky Surgical in an amount to be determined at trial, but no less than One Million Dollars ($1,000,000.00);

    (e)    Award punitive damages under Count III against Sky Surgical in the amount of Three Hundred and Fifty Thousand Dollars ($350,000.00) each;

    (f)    Award treble damages under Count IV against Jones, Schools and Sky Surgical, jointly and severally, pursuant to Va. Code §§ 18.2-499 and 500;

    (g)    Enter permanent injunctions in the form set out in paragraphs (1)(a) through (1)(h) above;

    (h)    Award DePuy Synthes attorneys' fees, interest, and costs against all Defendants pursuant to Va. Code §§ 18.2-499 and 500, et seq.; and

    (i)    Award such other relief as this Court deems fair and just.

## **DEMAND FOR JURY**

DePuy Synthes requests a trial by jury on all issues so triable.

- 17 -

                                                                        DEPUY SYNTHES SALES, INC.,

By _____
        Of Counsel

David E. Constine, III (VSB No. 23223)
Rebecca E. Ivey (VSB No. 76873)
Troutman Sanders LLP
1001 Haxall Point
PO Box 1122 (23218)
Richmond, VA 23219
Telephone: (804) 697-1258
Facsimile: (804) 698-5131
david.constine@troutmansanders.com
laura.windsor@troutmansanders.com

Elizabeth S. Flowers (VSB No. 78487)
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
liz.flowers@troutmansanders.com

      Counsel for Plaintiff