UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DePUY SYNTHES SALES, INC.,

        Plaintiff,

v.                           CIVIL ACTION NO. 2:13cv392

MICHAEL JONES,
JACOB SCHOOLS,
And SKY SURGICAL, INC.,

        Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff DePuy Synthes Sales, Inc. ("DePuy") employed defendants, Michael Jones ("Jones") and Jacob Schools ("Schools") to market DePuy's line of orthopaedic medical devices. Both men left DePuy and began working for its competitor, Sky Surgical, Inc. ("Sky Surgical"). This lawsuit ensued.

Two pending motions to dismiss now test DePuy's allegations of tort liability arising from Sky Surgical's employment of Jones and Schools, both of whom were restricted by post-termination noncompetes. Specifically, Sky Surgical challenges DePuy's claim that it tortiously interfered with any contract or expectancy, and all three Defendants have moved to dismiss DePuy's claims of statutory conspiracy. After considering the briefs and oral argument, on the facts pled and under existing

1

Virginia law, DePuy's allegations are sufficient to plausibly allege the challenged claims. As a result the undersigned recommends the Court deny defendants' motions to dismiss.

### RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

DePuy makes and sells medical products to treat spinal injuries and disease.[1] (Compl., ECF No. 1, ¶ 7). Its marketing effort is centered on its sales representatives who serve as DePuy's primary point of contact with surgeons and hospitals. Id., ¶ 10. The company makes substantial investments in educating and training its representatives, who work closely with surgeons and hospital staff, including attending surgeries where DePuy products are utilized. Id., ¶¶ 8-10.

Schools and Jones both worked for DePuy since early 2012, and before that for a DePuy-related sales organization called Quizmo. Id., ¶¶ 12-13. Throughout the time they represented DePuy products, both men were subject to confidentiality, nondisclosure, and non-compete restrictions which would survive their separation from the company. Id., ¶¶ 14-16; Exs. A & B. The post-termination covenants prohibited Jones and Schools from working for any competitor "in any position and in any location in which [they] could disadvantage" any DePuy company or advantage the competitor by disclosure or use of confidential

---

[1] The recommended findings of fact are taken from the Plaintiff's allegations which are accepted as true for purposes of the pending motions only. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

information.  Id., ¶ 19.  The agreements also prohibited both men from selling competitive products to any DePuy accounts, customers, or clients with whom they had contact during their last twelve months of employment by DePuy. Id., ¶ 21.

In the course of their work, both Schools and Jones acquired extensive confidential and proprietary information about DePuy products and their use by individual surgeons and hospital customers.  They also had access to confidential information concerning the company's pricing, sales strategy, and the strengths and weaknesses of particular products in the DePuy line.  Id., ¶ 11. Both Jones and Schools worked for DePuy servicing accounts throughout Hampton Roads.  Both men also called on specific surgeons and developed close relationships with these physicians, attending their surgeries and providing information on the performance and pricing of the DePuy products they used.  Id., ¶¶ 24-25.

In late 2012, both Jones and Schools resigned from DePuy and went to work for Sky Surgical, which distributes medical products made by Globus Medical which are directly competitive to DePuy's. At the time of his departure Jones stated that he had received an offer from a competitor, but also that he planned to abide by the terms of his post-termination covenants. He declined to identify Sky Surgical specifically, or to state whether he intended to accept the competitor's offer. Id., ¶ 31.

3

When Schools resigned he stated he was leaving the spinal implant business to enter the software development business. Id., ¶ 34.

Notwithstanding their remarks on departure, both men promptly began working for Sky Surgical selling products directly competitive to DePuy's. Since joining Sky Surgical, both Schools and Jones have continued to call on accounts they previously serviced for DePuy. Id., ¶¶ 36, 39. In several of these hospitals, surgeons who previously purchased and used DePuy products have switched to the competitive products made by Globus Medical, and sold by Sky Surgical. Throughout January and February 2013, both Schools and Jones were seen working on Sky Surgical's behalf at hospitals where they previously represented DePuy. Id., ¶¶ 40, 42.

On July 16, 2013, DePuy filed a four-count complaint against Jones, Schools, and their new employer, Sky Surgical. Counts I and II of the Complaint allege breach of contract against Jones and Schools respectively and are not at issue in the pending motions to dismiss. Count III alleges tortious interference with contract against Sky Surgical as a result of the company's hiring of Jones and Schools in violation of their written non-competes. Specifically, Count III, which incorporates the prior factual allegations, also alleges that Sky Surgical knew of the existence of Jones' and Schools' non-

competition, nondisclosure and nonsolicitation obligations, and that the company's engagement and continued employment of both men "is designed to induce [them] to breach their contractual obligations to DePuy." Id., ¶ 61.

Count IV of the Complaint alleges statutory conspiracy against all three defendants under Virginia Code Sections 18.2-499 and 500. In addition to incorporating the prior factual allegations, DePuy alleges that all three defendants agreed with each other to have Jones and Schools "breach their fiduciary duties, use and misappropriate confidential information, and otherwise violate their employee secrecy agreement." Id., ¶ 65.

Jones and Schools moved to dismiss the statutory conspiracy count against them and Sky Surgical has moved to dismiss both Counts III and IV arguing the facts pled are insufficient to plausibly state a claim for relief under either legal theory.

## ANALYSIS

**A.** **Standard of Review.**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A pleading fails to meet this standard and is subject to dismissal under Rule 12(b)(6) when it does not "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

5

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"Factual allegations must be enough to raise a right to relief above the speculative level" and beyond the level that is merely conceivable. Twombly, 550 U.S. at 555. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not state a claim. Iqbal, 556 U.S. at 678.

The Supreme Court has described the motion to dismiss analysis in two parts. First, the Court must accept the allegations of fact as true. Iqbal, 556 U.S. at 678. However, a court is not required "to accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), or a legal conclusion unsupported by factual allegations, Iqbal, 556 U.S. at 678-79. After reviewing the allegations, the Court must consider whether they are sufficient to state a plausible claim for relief. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

A Rule 12(b)(6) motion, then, should be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences

from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

**B.   Count III plausibly alleges facts sufficient to state a tortious interference claim against Sky Surgical.**

Sky Surgical moved to dismiss Count III which alleges a claim for tortious interference with contract.   In order to state a claim for tortious interference under Virginia law, DePuy must plead and prove four elements: "(1), the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." Chaves v. Johnson, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985).   The interferor's knowledge of the relationship and its intent to disturb it are necessary elements. Durrette Bradshaw, P.C. v. MRC Consulting, L.C., 277 Va. 140, 146-47, 670 S.E.2d 704, 707 (2009).   But the intent to interfere may be established in cases where the defendant "does not act for the purpose of interfering with the contract, or desire it but knows that the interference is certain or substantially certain to occur as a result of his action." Id.

7

at 146, 670 S.E.2d at 707 (citing comment j to § 766 Restatement (Second) of Torts).

If the contract or expectancy allegedly interfered with is terminable at will, Virginia law imposes the additional requirement that the interference be accomplished by improper methods. Duggin v. Adams, 234 Va. 221, 227, 360 S.E.2d 832, 836 (1987). Improper methods include those that are illegal or independently tortious, such as bribery or fraud, but also conduct which "violate[s] an established standard of a trade or profession, or involve[s] unethical conduct[][,] [s]harp dealing, overreaching or unfair competition . . . . " Dunn, MacCormack & McPherson v. Connolly, 281 Va. 553, 559, 708 S.E.2d 867, 870 (2011).

Here, the parties disagree about whether DePuy must prove improper methods. Sky Surgical contends that any damage flowing from the alleged tortious interference would necessarily come from customers, whose relationships with DePuy are at will. See Preferred Sys. Solutions, Inc. v. GP Consulting, LLC, 284 Va. 382, 403-04, 732 S.E.2d 676, 688 (2012) (requiring improper methods to state a claim of tortious interference with at-will customer contract). For its part, DePuy argues that Count III alleges tortious interference with its employment contracts with Schools and Jones which were not terminable at will. Sky Surgical interfered with these contracts, inducing breach by

8

DePuy's former representatives.  As a result, DePuy claims no showing of improper methods is required.  A close reading of the Complaint supports DePuy's position.

In Count III, DePuy incorporates the general allegations establishing the written employment agreements and their post-termination obligations.  (Compl., ECF No. 1, ¶¶ 14-16, Exs. A & B). These documents establish that Jones and Schools were free to leave DePuy to pursue other interests, but not to violate their post-termination covenants.  The agreements imposed extensive restrictions on both men "for a period of eighteen months after the last date of [their] employment." (Id., ¶¶ 19 – 21).  Neither Jones nor Schools has yet challenged the enforceability or duration of these obligations, which they had no ability to unilaterally terminate.

In the remainder of Count III, DePuy specifically alleges that Sky Surgical knew of the existence of these post-termination obligations (Id. ¶¶ 59-60), and hired both men in order to induce them to breach their contracts with DePuy. Because neither Jones nor Schools could avoid the post-termination covenants, DePuy has pled interference with a contract that was not terminable at will. As a result, Virginia law does not require DePuy to plead or prove interference by improper methods.

In Duggin v. Adams, 234 Va. 221, 360 S.E.2d 832 (1987) the Supreme Court of Virginia explained that improper methods are necessary to establish tortious interference with a terminable at will contract, because interference with "expectancies, or at will relationships" does not induce a breach of contract. This is because ending (or failing to begin) an at-will business relationship is to be expected in the usual "rough-and-tumble world comprising the competitive market place." ITT Hartford Grp., Inc. v. Virginia Fin. Assocs., Inc., 258 Va. 193, 204, 520, S.E.2d 355, 361 (1999). Thus, when an individual's interest in a contract is terminable at will, it is "essentially only an expectancy of future economic gain . . . [and] a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference . . . . but also that the defendant employed 'improper methods.'" Duggin, 234 Va. at 226-27, 360 S.E.2d at 836 (quoting Hechler Chevrolet, Inc. v. Gen. Motors Corp., 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985)). As the Supreme Court simply put it, "the extent of permissible third party interference increases as the degree of enforceability of a business relationship decreases." Id. at 226, 360 S.E.2d at 836.

Here, DePuy had more than an expectancy of future gain with respect to Schools and Jones. Both men were parties to

10

enforceable contracts which, for 18 months, precluded the exact employment relationship they are alleged to have begun.

Importantly, DePuy alleges that Sky Surgical knew of the existence of these enforceable duties and intended to induce both Jones and Schools to breach them.  These claims are not merely "threadbare recitals of the elements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To the contrary, DePuy's detailed factual allegations concerning the nature of the restrictions, the competitive posture of Sky Surgical, and post-termination sales to the restricted customers, all support the reasonable inference that Sky Surgical knew that employing both men in the capacity alleged would cause them to breach their agreements with DePuy.  This is sufficient to state a claim for intentional interference with contract under Chaves.

Apparently recognizing that DePuy has otherwise met the elements of a tortious interference claim, Sky Surgical urges the Court to focus on what it calls "the real interests at stake . . . sales accounts with hospitals and doctors." (Reply, ECF No. 13 at 6). Sky Surgical contends that DePuy's true motivation is to secure the lost business resulting from Jones' and Schools' departure.  Any damage flowing from the interference, Sky Surgical claims, would necessarily result from lost customers.  Because these doctors and hospitals were free to take their business to Sky Surgical, or any other competitor,

the Defendant argues that DePuy must show improper methods to state a claim for tortious interference with these terminable-at-will relationships under the Virginia Supreme Court's decision in <u>Preferred Systems Solutions, Inc. v. GP Consulting, LLC</u>, 284 Va. 382, 732 S.E.2d 676 (2012).

Although Sky Surgical has correctly described the <u>Preferred Systems</u> decision, the case is readily distinguished. In that case, the court specifically held that "the breach of a non-compete clause is not in itself an improper method or means." <u>Id.</u> at 404, 732 S.E.2d at 688. Unlike this case, <u>Preferred Systems</u> specifically alleged the tortious interference with a contract terminable at will. There, the defendant's subcontractor, which was bound by a non-compete, allegedly breached that agreement by assisting a Preferred Systems competitor with obtaining government business formerly sent to Preferred Systems under an open purchase order. Preferred Systems did not allege that the competitor interfered with its agreement with the departing subcontractor. Instead, the contract allegedly interfered with was a blanket purchase agreement between the Government and Preferred Systems, which the court explicitly held was terminable at will and at most a business expectancy. <u>Id.</u>, 732 S.E.2d at 688. As a result, Preferred Systems stands for the proposition that inducing the breach of a non-competition agreement is not sufficient to state

12

a claim for tortious interference with a terminable at-will contract.

But as set forth above, DePuy is alleging interference with post-termination contracts which were not terminable at will. DePuy does not have to rely on the downstream interference with its at-will customer relationship because the contract with Schools and Jones (if enforced) prevents them from working for Sky Surgical and selling competitive products regardless of whether they sell any. The question of damages properly chargeable to Sky Surgical must be resolved after discovery.

At this stage of the proceedings, the Court must draw all reasonable inferences from the facts in favor of DePuy as the non-moving party. The company's non-compete agreements contained detailed and comprehensive restrictions on both men's ability to work for competitors, including Sky Surgical.  Preventing the loss of at-will customers is only one goal of such restrictions. As a result, DePuy has alleged the elements of a claim for tortious interference and the Court should deny Sky Surgical's motion to dismiss Count III.

C.   **Count IV plausibly alleges breach of obligations independent of the contracts, sufficient to state a claim for business conspiracy.**

All three defendants moved to dismiss Count IV, DePuy's claim of business conspiracy under Virginia Code Section 18.2-

13

499 and 500. Under the statute, injured parties can recover treble damages against "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever." Shirvinski v. Unites States Coast Guard, 673 F.3d 308, 321 (4th Cir. 2012) (quoting Va. Code Ann. §§ 18.2-499, 500). Establishing a conspiracy does not require proof that the conspirators' overriding purpose was to injure the plaintiff. The conduct charged must only be "intentional[], purposeful[] and without lawful justification." Simmons v. Miller, 261 Va. 561, 578, 544 S.E.2d 666, 677 (2001). But "a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil claim," under the statute. Station No. 2, LLC v. Lynch, 280 Va. 166, 174, 695 S.E.2d 537, 541 (2010). In order to constitute an unlawful act sufficient to state a claim for conspiracy under Va. Code § 18.2-500, the breached duty must arise independently by statute or the common law. Id.

Defendants argue that DePuy has alleged nothing more than a conspiracy to breach a contract, and thus no "unlawful act" sufficient to plausibly allege a statutory conspiracy. DePuy contends that its allegations encompass both the breach of contractual duties and other duties arising independent of the

14

contract.   It argues that the Supreme Court's decision in Station No. 2 should not be read so broadly as to preclude claims of statutory conspiracy which involve an overlapping contractual breach.  The undersigned agrees with DePuy.

The plaintiffs in Station No. 2, commercial tenants in a downtown Norfolk building, alleged an oral agreement with the owner of the building's upper floors to permit access to install sound-deadening insulation to permit operation of a night club in the ground floor space.  The defendants, who made the alleged oral promise, later denied plaintiff access to install the insulation.  Without sound-proofing, complications arose with Station No. 2's plans for live entertainment and the nightclub failed. Id. at 170-71, 695 S.E.2d at 539. Station No. 2 alleged the breach was brought about by a conspiracy with the ground floor owners (its landlord) and filed suit alleging fraud, contract and statutory conspiracy claims. Id. at 171, 695 S.E.2d at 539-40.

In affirming the trial court's grant of demurrer on the statutory conspiracy claim, the Virginia Supreme Court first cited the long-established principle that "non-performance of a duty may sound in both contract and in tort, but only where the omission or non-performance of the contractual duty also violates a common law duty."  Id. at 171, 695 S.E.2d at 540. Station No. 2's alleged oral agreement, the court wrote, did

15

"not implicate statutory or independent common law duties." Id. at 175, 695 S.E.2d at 542. Specifically, the court observed: "[E]ven assuming the defendants conspired among each other, preventing Station No. 2 from installing the soundproofing material does not constitute an 'unlawful act.'" Id. at 173, 695 S.E.2d at 541. This is because the only source of the duty – to permit installation of the soundproofing – was contractual.

Acknowledging its prior precedent in which the court had sustained common law and statutory conspiracy claims where the plaintiff had alleged only a conspiracy to procure a breach of contract, the court noted that it was "presently" of the opinion "that a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil claim under Va. Code § 18.2-500." Id. at 174, 695 S.E.2d at 541.

In doing so, however, the court distinguished several other of its widely-cited precedents. Specifically, and as relevant to the facts before this Court, the court cited Advanced Marine Enterprises v. PRC, Inc., 256 Va. 106, 112, 501 S.E.2d 148, 151 (1998). The Station No. 2 opinion distinguished Advanced Marine because the defendant in that case "knew its actions would constitute actionable tortious interference, . . . and purposefully proceeded with its plan to hire employees of the plaintiff who were subject to a covenant not to compete."

16

*Station No. 2*, 280 Va. at 174, 695 S.E.2d at 542 (citing *Advanced Marine Enters.*, 256 Va. at 112, 501 S.E.2d at 151. Similarly, *CaterCorp., Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 26, 431 S.E.2d 277, 280-81 (1993), where a competitor conspired with plaintiff's employee in violation of the employee's common law duty of loyalty, escaped abrogation in *Station No. 2*. 280 Va. at 175, 695 S.E.2d at 542. Finally, the court cited two additional cases in which the contractual claims overlapped an alleged breach of fiduciary duties: *Simmons v. Miller*, 261 Va. 561, 578, 544 S.E.2d 666, 676-77 (2001), and *Feddeman & Company v. Langan Associates, P.C.*, 260 Va. 35, 46, 530 S.E.2d 668, 675 (2000). *Station No. 2*, 280 Va. at 175, 695 S.E.2d at 542.

These are precisely the duties which DePuy alleges underlie the Defendants' conspiracy. Specifically, DePuy alleges both Schools and Jones had access to and misappropriated confidential information. Contrary to Defendants' argument, DePuy's allegations are not conclusory.

The Complaint alleges that both Schools and Jones spent "hours in surgeries with surgeon customers, [and] work[ed] closely with hospital staff." (Compl., ECF No. 1, ¶10). It asserts both men received confidential information beyond that ordinarily associated with a sales position. For example, it claims its representatives learned surgeons' individual

purchasing patterns and volumes, their preference for particular DePuy products, and the strengths and weaknesses of particular DePuy products in particular surgeries, using particular surgical techniques. Id., ¶¶ 11, 26. In addition, the pricing information for DePuy products is negotiated directly with each medical facility, on terms which remain confidential to DePuy. Id., ¶ 29.

The Complaint also alleges that both Schools and Jones went to work immediately for a directly-competitive seller of orthopaedic medical devices, and that DePuy subsequently witnessed the men calling on the same hospitals and working with surgeons and customers who formerly purchased DePuy products. Finally, the company alleged that all of this conduct breached fiduciary duties owed to DePuy, and resulted in misappropriation of their confidential information.

These last claims constitute legal conclusions. But accepting as true the extensive factual allegations made against all three Defendants, and considering the competitive employment context in which they are alleged, the suggestions of liability are not conclusory. Reasonable inferences from the facts are sufficient to raise DePuy's right to relief above the speculative level.

Standing alone, a conspiracy to breach the employment agreements would not be sufficient to sustain a civil claim

18

under Va. Code § 18.2-499. But here the conduct alleged to have violated the employment agreements overlaps fiduciary duties inherent in the employment relationship. Because the source of these duties is outside the employment contract, a conspiracy to breach them would be sufficient to sustain a claim of statutory conspiracy under Station No. 2. In short, a fair reading of Station No. 2 compels the conclusion that the Supreme Court narrowed, but did not eliminate the category of cases which plausibly allege both business tort and contract claims, particularly in the employment setting.

Recognizing that the limits on such claims are best defined in the first instance by the Virginia Supreme Court, the Fourth Circuit recently certified the question of whether a claim of tortious interference with contract can constitute the "unlawful act" necessary to establish a statutory conspiracy. Dunlap v. Cottman Transmissions Sys., LLC, ____ F. App'x. _____, 2013 WL 4505143 (4th Cir. Aug. 21, 2013). In Dunlap, a case appealed from this Court, plaintiffs had asserted both business conspiracy and tortious interference claims arising out of the breach of a franchise agreement. The trial court found the tortious interference claims were barred by the statute of limitations, and also granted defendant's motion to dismiss statutory conspiracy claims relying on Station No. 2. Dunlap, 2013 WL 4505143 at *2.

In certifying the question, the Fourth Circuit noted that there were "plausible reasons to limit Station No. 2's holding to actual breach of contract claims, and to distinguish tortious interferences with contract or business expectancy." Dunlap, 2013 WL 4505143 at *3. The duty not to interfere with agreements arises independently from the contract because it falls on third parties, not the parties to the agreement. Id.

Likewise, here, DePuy's allegations of tortious interference against Sky Surgical arise independent of DePuy's employment contracts with Schools and Jones. In addition, unlike in Station No. 2, the conduct alleged against Jones and Schools may violate both contractual and common law obligations. Thus, unlike Station No. 2 which involved only the violation of contractual duties, the claims against these Defendants are sufficient to state a claim for statutory conspiracy. Compare Star City Comics & Games, Inc. v. Webbed Sphere, Inc., No. 7:10cv417, 2010 WL 5186713 (W.D. Va. Dec. 9, 2010) (unpublished) (citing Station No. 2 and allowing statutory conspiracy claims against competitor which hired restricted employee), with Zurich Am. Ins. Co. v. Turbyfill, No. 7:10cv282, 2010 WL 4065527 (W.D. Va. Oct. 15, 2010) (unpublished) (relying on Station No. 2 to dismiss claims of statutory conspiracy where plaintiff's allegations of independent duties were conclusory).

Defendants argue that the Supreme Court's eventual resolution of the certified question is grounds to stay action on their motion, and the case in general. While it is likely that the Court's decision will be available before trial,[2] in light of Plaintiff's opposition to stay, and the clarity of existing law on the remaining claims, there is little efficiency in delaying discovery pending the Supreme Court's ruling. Nearly all of the evidence to be gathered in this case will also be relevant to the properly pled contract claims which are not at issue in the pending motions. If adopted, this report also concludes that Sky Surgical will remain a defendant on the separate tortious interference claims, which the report concludes have been properly pled. Finally, as set forth above, this report concludes that Virginia law, as presently interpreted by the Supreme Court of Virginia, permits the claim of statutory conspiracy based on the facts pled and reasonable inferences from those facts in the context of the employment dispute alleged. However, considering the likely clarification to come from the Supreme Court's ruling in Dunlap, this report recommends that the Defendants' motions to dismiss be denied

---

[2] At the hearing on oral argument, counsel for Jones and Schools proffered an exhibit which recorded the average length of time from certification to decision. The average of the cases reported was 203 days, with a large majority being decided in substantially fewer than 200 days. As the court accepted the certified question on September 10, 2013, it will likely resolve the question before trial in this case, which is not yet set as a result of the pending motions. (Hearing Ex., ECF No. 20-1).

without prejudice to their later right to assert it after the Supreme Court's ruling.

## IV.  RECOMMENDATION

Because the facts alleged, and reasonable inferences from those facts, are sufficient to raise DePuy's likelihood of success on both claims above the speculative level, the undersigned RECOMMENDS the Court deny both motions to dismiss. But given the pending certified question in <u>Dunlap v. Cottman Transmission Systems, LLC</u>, 2013 WL 4505143, which is likely to impact the law governing both claims, the undersigned also RECOMMENDS the dismissal be without prejudice to argue new legal challenges to the sufficiency of the pleadings if warranted by a change in the law before trial.

## V.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

22

2.   A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

> /s/
> Douglas E. Miller
> United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

November 5, 2013